IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 26, 2016 Session

## STATE OF TENNESSEE v. AUSTIN DEAN

**Appeal from the Criminal Court for Knox County**
**No. 103539A      Steven W. Sword, Judge**

**Nos. E2015-01217-CCA-R3-CD & E2015-02366-CCA-R3-CD**
**Filed October 7, 2016**

The Defendant, Austin Dean, pleaded guilty to eleven counts of aggravated robbery, Class B felonies. *See* T.C.A. §§ 39-13-402 (2014). Pursuant to the plea agreement, the trial court merged Counts 2 and 3 into Count 1, merged Counts 5, 6, and 7 into Count 4, and merged Counts 9, 10, and 11 into Count 8, and the court would determine the length and manner of service of the sentences. The trial court imposed three eight-year sentences and ordered partial consecutive service, for an effective sixteen-year sentence. On appeal, the Defendant contends that the trial court erred by ordering consecutive service.[1] We affirm the judgments of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and CAMILLE R. MCMULLEN, J., joined.

Wesley D. Stone (on appeal and at motion to reduce sentence) and Bruce Alldredge (at guilty plea and sentencing hearings), Knoxville, Tennessee, for the appellant, Austin Dean.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Charm P. Allen, District Attorney General; and Ta Kisha M. Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1] After the Defendant filed his notice of appeal regarding the trial court's sentencing determinations, the Defendant filed a motion to reduce his sentence pursuant to Tennessee Criminal Procedure Rule 35. This court stayed the appeal in docket number E2015-01217-CCA-R3-CD pending the outcome of the Defendant's motion. The trial court ultimately denied the motion, and the Defendant filed a subsequent notice of appeal, which was assigned docket number E2015-02366-CCA-R3-CD. The cases were consolidated under docket number E2015-01217-CCA-R3-CD.

# OPINION

At the guilty plea hearing, the State's recitation of the facts showed that

[t]he testimony would be that on March 17th, 2014, that Mr. Jose Vincente was at the Super Wash House on Central. While washing his clothes, the proof would be that Mr. Austin Dean, along with somebody else, pulled up in a vehicle, entered the Super Wash House armed with a weapon, made a demand for . . . Mr. Vincente's property. Mr. Vincente was scared and gave his property. Mr. Dean was able to get away from the Super Wash House without being arrested.

The neighbors observed this car pull up and observed the individuals get out the car. They thought it was strange, and when they found out that . . . there was [a] robbery, they reported their observations to the police.

The proof would be that two days later Ms. Helen Sullivan and Mr. Mark Roach were at the Super Wash House on Central. They were washing their clothes, and the proof would be that while they were washing their clothes, a vehicle pulled up that was driven by Mr. Bradley Caswell. He stops the vehicle. He and Mr. Dean get out of the vehicle, armed with a weapon. The proof would be that the neighbors were at home and observed this vehicle. In light of the previous aggravated robbery, this caught their attention, and they actually placed a phone call to 911 before the robbery took place, telling the officers what they were observing.

The proof would further be that Mr. Dean and Mr. Caswell entered the Super Wash House armed with a weapon, made a demand for the property belonging to Ms. Sullivan and Mr. Roach. They took their property. Both Ms. Sullivan and Mr. Roach were terrified. After . . . Mr. Dean and Mr. Caswell got their property, they ran out of the Super Wash House back to the waiting car. They got in the[] car, put the property that was taken from Ms. Sullivan and Mr. Roach in the car, along with . . . the BB gun.

Since the neighbors had already called the police, the police were on their way. As the car pulls off, the neighbor gets behind the car and stays on the phone with 911 until the police arrive. Officers were able to stop the car. In the car they do find Mr. Caswell driving. Mr. Dean is in the passenger seat. The stolen property is in the car. The gun is in the car.

Mr. Dean is taken back to the police department. Mr. Dean is informed of his *Miranda* rights. He waives those *Miranda* rights. He tells the officers that he did commit the aggravated robbery on March 17th, 2014, and that he committed the aggravated robbery on March 19th, 2014.

The trial court advised the Defendant that pursuant to the plea agreement, the court would determine the length and manner of service of the sentences. The court advised the Defendant of the possible sentences associated with the offenses to which he was pleading guilty, and the Defendant said he understood. The court advised the Defendant of his constitutional rights. The Defendant understood he had the rights to an attorney, to trial by jury, to confront and cross-examine witnesses, to present witnesses in his defense, to choose whether to testify, and to appeal any conviction. The Defendant also understood he had the privilege against self-incrimination, and the court explained the State's burden of proof at a trial. The Defendant stated he was voluntarily waiving those rights and entering his guilty pleas.

At the sentencing hearing, a presentence report was received as an exhibit. The report reflects that the twenty-one-year old Defendant had previous convictions for three counts of burglary of an automobile, two counts of identity theft, vandalism, and contributing to the delinquency of a minor. The report reflects that the Defendant previously received judicial diversion but that diversion was revoked. Likewise, the report reflects that the Defendant received probation but that his probation was revoked twice. At the time of the presentence investigation, an outstanding arrest warrant for a probation violation existed in a nearby county.

The presentence report reflects that the Defendant graduated from high school in 2012 and that he reported having good physical and mental health. He reported first drinking alcohol at age twelve and last drinking in 2013. He reported first smoking marijuana at age six and last smoking in 2011, before being placed on probation for a previous conviction. The Defendant reported using various pain medications, mushrooms, and LSD at age fifteen. The Defendant reported receiving substance abuse treatment at New Life Lodge in 2009 and noted drug court ordered him to spend time at a halfway house. The Defendant reported having a good relationship with his family and co-parenting his son with his former girlfriend. The report reflects the Defendant was employed between August 1, 2011, and August 2, 2012.

Jose Vincente provided a victim impact statement to the trial court. Mr. Vincente stated that his life changed as a result of the robbery. He said that the previous six months had been difficult, that he had sought psychological treatment, and that he had lost "a great

deal of trust." He said he no longer went to the Laundromat alone and that he went earlier in the day to prevent being out late at night. He said that immediately after the robbery, he suffered from shock, could not work, and eventually, his employment was terminated. He said that sometimes he felt fine but that other times he suffered from nightmares and nervousness.

The Defendant testified that although he did not identify his codefendant to the investigating officers, his codefendant was involved in the aggravated robberies. The Defendant said he simply wanted to take responsibility for his conduct. He said that he was age twenty at the time of the robberies, that the codefendant was age twenty-five, and that the Defendant knew the codefendant had a previous conviction for aggravated robbery. The Defendant said that the robberies were the codefendant's idea, that the codefendant's BB gun and car were used during the robberies, and that the gun was not loaded. The Defendant admitted he held the gun during the robberies and said the codefendant told the Defendant to hold it.

The Defendant testified that he knew the codefendant told the police the Defendant coerced the codefendant into committing the robberies by pointing a gun at the codefendant. The Defendant denied that he forced the codefendant to commit the robberies and that he pointed a gun at the codefendant.

The Defendant testified that the presentence report correctly reflected his previous convictions but noted that the three counts of vehicular burglary and two counts of identity theft occurred on the same date. Relative to the contributing to the delinquency of a minor conviction, he said that he and his former girlfriend were going to a hotel, that he had alcohol in the backseat of his car, that he was age eighteen, and that his girlfriend was age seventeen.

On cross-examination, the Defendant testified that he was serving a sentence on probation at the time he committed the present offenses. He agreed he told the probation officer that he had a drug problem and said at age fourteen he used Morphine, Roxicodone, and marijuana. He admitted he had used LSD, mushrooms, and cocaine. He said that as a juvenile, he was placed in the custody of the Department of Children's Services (DCS) because he committed domestic violence against his mother. He explained that at age sixteen, he and his mother argued, that he yelled and cursed, and that he punched a vehicle. He agreed he received probation for domestic abuse. He agreed his judicial diversion was revoked for the conviction for contributing to the delinquency of a minor because he began using drugs again and because he was arrested for identity theft and vehicular burglary. He said that he paid the victims restitution, that he received probation for identity theft and vehicular burglary, and that his probation was violated by committing vandalism. He said

-4-

that he received probation for vandalism and was ordered to participate in the drug court program. He agreed the instant offenses were committed while he attended drug court.

The Defendant testified that the first robbery occurred after the codefendant repeatedly asked him to participate in a robbery and that he eventually "gave in" to the codefendant's requests. The Defendant said that the codefendant had the BB gun inside the codefendant's car and that the codefendant drove to the Laundromat. The Defendant said they did not discuss where they were going or what they were going to do once they arrived. He said that the codefendant put the gun in his hand while they were inside the car and that the codefendant said, "Let's go." The Defendant said that he walked inside the Laundromat behind the codefendant, that the Defendant walked up behind Mr. Vincente and pointed the BB gun at Mr. Vincente's head, and that the Defendant asked Mr. Vincente, "Where's the money?" The Defendant said his codefendant grabbed Mr. Vincente's wallet and struck Mr. Vincente before they left. The Defendant said he and the codefendant argued about the codefendant's striking Mr. Vincente. The Defendant said he and the codefendant split $400 or $500 they took from Mr. Vincente.

The Defendant testified relative to the second robbery that the codefendant drove to the Laundromat, that they covered their faces with bandanas, and that they "did the same thing." He said that the codefendant gave the BB gun to him again before entering the Laundromat. The Defendant said that he pointed the gun at Ms. Sullivan's chest, that he saw Ms. Sullivan's purse lying on a dryer, and that he grabbed it and ran. The Defendant said that he did not see Mr. Roach until the Defendant turned and ran, that he did not know what the codefendant did to Mr. Roach, and that the Defendant and the codefendant ran outside simultaneously.

The Defendant testified that he did not recall the police taking him to the Laundromat for a "show-up" identification but that he recalled giving a statement to the police. He agreed he never mentioned the codefendant to the police but could not recall whether he told the police that the gun belonged to the codefendant.

The trial court stated that it had considered the principles of sentencing, including the imposition of a justly deserved sentence and the fair and consistent treatment of all defendants. Regarding these sentencing principles, the court noted that the codefendant pleaded guilty as a Range III, persistent offender to the aggravated robberies and received an effective twenty-year sentence at 100% service. The court said that the codefendant's Range III offender classification was based upon the codefendant's previous criminal convictions and that the concurrent twenty-year sentences were the minimum sentences for Class B felonies. The court stated that simply because a codefendant received a twenty-year sentence did not mean another defendant who engaged in the same conduct deserved an identical sentence. The trial court found that the Defendant was a Range I, standard offender.

Relative to mitigation, the trial court found that factor (13) applied. *See* T.C.A. § 40-35-113(13) (2014) ("Any other factor consistent with the purposes of this chapter."). The court found that the Defendant was entitled to "some mitigation" because he confessed and admitted his role in the offenses. The trial court found, though, the Defendant's remorse for his conduct was the result of being caught by the police. The court stated that had the Defendant identified the codefendant to the police, the court would have placed more weight upon the Defendant's confession.

Relative to enhancement factors, the trial court found that factor (1) applied based upon the Defendant's previous convictions contained in the presentence report and the Defendant's sentencing hearing testimony. *See id*. § 40-35-114(1) (2014) ("The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range[.]"). The court found that Defendant admitted during the sentencing hearing that he engaged in a pattern of criminal behavior by obtaining and consuming illegal substances. The court placed "a lot of weight" on the Defendant's criminal history. The court also found that factor (8) applied because the Defendant had previously received the benefit of alternative sentencing but had failed to comply with the terms of his release on several occasions by committing new criminal offenses. *See id*. § 40-35-114(8) ("The Defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community[.]"). The court found that the Defendant previously received the benefit of judicial diversion but that diversion was revoked. The court found that the Defendant previously received the benefit of probation but that the probation was revoked twice. The court did not place great weight upon this factor because of the significant weight placed upon the Defendant's previous convictions. The court, likewise, found that factor (13) applied based upon the presentence report and the Defendant's testimony that he was on probation at the time he committed the present offenses. *See id*. § 40-35-114(13) ("At the time the felony was committed, . . . the defendant . . . [was] [r]eleased on probation[.]").

The trial court found that the Defendant and the codefendant were equal participants in the aggravated robberies and that they committed the offenses to obtain money to purchase drugs. The court found that the codefendant and the Defendant did not coerce each other. The court found that the Defendant was responsible for the injuries inflicted by the codefendant and that the Defendant's conduct toward Mr. Vincente caused physical harm.

The trial court noted the principles and purposes of sentencing, specifically discussing the imposition of a justly deserved sentence in relation to the seriousness of the offense and ensuring fair and consistent treatment of all defendants by eliminating unjustified disparity in sentencing. The court found that sufficient enhancement factors applied to sentence the

Defendant to twelve years for each conviction and that consecutive sentencing was justified based upon the Defendant's committing the present offenses while on probation. *See id.* § 40-35-115(b)(6) (2014) ("The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that . . . [t]he defendant is sentenced for an offense committed while on probation[.]"). The court stated that if the court were to sentence the Defendant to twelve years and to order each count to be served consecutively, the Defendant would receive a thirty-six-year sentence. The court found, though, thirty-six years was not appropriate because the codefendant, whom the court found was equally responsible for the offenses, received twenty years as a persistent offender.

The trial court, though, believed the circumstances of the offenses and the Defendant's being on probation at the time of the offenses required consecutive service and determined an effective twelve-year sentence was insufficient. The court imposed eight-year sentences for each conviction and ordered consecutive service of two counts, for an effective sixteen-year sentence at 85% service. The Defendant ultimately filed a motion to reduce his sentence, which the court denied. *See* Tenn. R. Crim P. 35. This appeal followed.

The Defendant contends that he received an excessive sentence. He argues that the trial court erred by ordering partial consecutive sentencing and that his sixteen-year sentence is disproportionate to his codefendant's sentence. The Defendant requests that this court impose concurrent sentences, for an effective eight-year sentence. The State responds that the trial court did not abuse its discretion. We agree with the State.

This court reviews challenges to the manner of service of a sentence within the appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court must consider any evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the Administrative Office of the Courts to sentencing practices for similar offenses in Tennessee, any statement that the defendant made on his own behalf, and the potential for rehabilitation or treatment. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991) (citing T.C.A. §§ 40-35-103 (2014), -210 (2014); *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986); *State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987)); *see* T.C.A. § 40-35-102 (2014).

The abuse of discretion with a presumption of reasonableness standard also applies to the imposition of consecutive sentences. *State v. Pollard*, 432 S.W.3d 851, 859 (Tenn. 2013). A trial court has broad discretion in determining whether to impose consecutive service. *Id.* A trial court may impose consecutive sentencing if it finds by a preponderance

of the evidence that one criterion is satisfied in Tennessee Code Annotated section 40-35-115(b)(1)-(7) (2014). In determining whether to impose consecutive sentences, though, a trial court must ensure the sentence is "no greater than that deserved for the offense committed," and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4); *see State v. Desirey*, 909 S.W.2d 20, 33 (Tenn. Crim. App. 1995).

The Defendant does not argue that the trial court was not permitted to impose consecutive service based upon the Defendant's being on probation at the time of the present offenses. *See* T.C.A. § 40-35-115(b)(6). Rather, he argues that the trial court erred by imposing partial consecutive service because his effective sentence is not justly deserved based upon the seriousness of the offenses and is not the least severe measure necessary to achieve the purposes for which the sentences were imposed. *See id*. §§ 40-35-102(1) (2014), 40-35-103(2) (2014). In support, the Defendant relies upon *State v. Biggs*, 482 S.W.3d 923 (Tenn. Crim. App. 2015).

In *Biggs*, the defendant pleaded guilty to four counts of aggravated robbery, during which the defendant displayed a gun and demanded money from employees at various businesses. The defendant also pleaded guilty to two counts of misdemeanor theft, during which the defendant took bags of potting soil from Walmart and took money from a convenience store's cash register. The Defendant pleaded guilty to attempted aggravated robbery, during which he attempted to take money from another cash register. The cashier closed the register drawer on the defendant's hand, the defendant pulled out a gun, and a struggle ensued. The defendant left the scene without the gun, which was later determined to be a toy. The toy gun was also used in the four aggravated robberies to which the defendant pleaded guilty. *Biggs*, 482 S.W.3d at 925.

The trial court in *Biggs* determined the defendant was a Range III, persistent offender based upon his previous convictions. The court imposed partial consecutive service and ordered two of the defendant's twenty-two-year sentences for aggravated robbery be served consecutively, for an effective forty-four-year sentence to be served at 85%. The trial court imposed consecutive sentences based upon the defendant's having an extensive criminal history and the defendant's serving a sentence on probation at the time he committed the offenses. The defendant had been previously convicted of forgery, evading arrest, theft, casual exchange, possession of cocaine, possession of marijuana, and speeding, and he admitted he was on probation at the time he committed the offenses. Relative to imposing a just and deserved sentence based upon the offense, the trial court noted that full consecutive service was not warranted but that partial consecutive service produced a fair and just sentence. *Id.* at 926.

On appeal, the *Biggs* majority concluded that the trial court erred by ordering partial consecutive service. The majority focused, in part, on the circumstances of the offenses, noting that the robberies were committed with a plastic gun, that none of the victims were injured, and that two victims knew the gun was plastic. The majority also focused on the Defendant's age of forty-nine and lack of previous convictions for violent offenses. This court concluded that the sentence was tantamount to a life sentence and that forty-four years was not deserved in relation to the offenses involved and was not the least severe measure necessary to achieve the purposes of sentencing. *Id*. at 927.

In the present case, the Defendant agreed to plead guilty to three counts of aggravated robbery with the length and manner of service to be determined by the trial court. We note that the codefendant agreed to plead guilty as a Range III, persistent offender to concurrent sentences to one count of aggravated robbery in exchange for a twenty-year sentence at 100% service and to felony theft in exchange for a two-year sentence. The trial court approved the codefendant's plea agreement without holding a sentencing hearing. Relative to the Defendant, the trial court imposed the minimum within-range sentence of eight years for each aggravated robbery and imposed partial consecutive sentencing based upon the Defendant's being on probation at the time of the present offenses and the circumstances of the offenses.

We conclude that the record does not reflect the trial court abused its discretion by ordering partial consecutive service. Although the Defendant did not use a real firearm during the robberies, the victims did not know it was a BB gun, and the Defendant admitted he pointed the gun at the victims' head and chest. Mr. Vincente told the court that after the robbery, he sought psychological treatment, suffered from shock, could not work, and ultimately, was terminated from his employment. Furthermore, the codefendant struck Mr. Vincente during the robbery. The Defendant had previous convictions for burglary of an automobile, identity theft, vandalism, and contributing to the delinquency of a minor. Although these are not violent offenses, the Defendant' previous criminal activity was extensive, and his participation in three aggravated robberies reflect an escalation into violent crime. The Defendant admitted he had committed domestic assault against his mother as a juvenile. The Defendant admitted to significant drug use during his short life, and the court believed the present offenses were committed for the purpose of obtaining drugs. We note that the Defendant was on probation and participating in drug court at the time he committed the present offenses. The Defendant also admitted to violating the conditions of probation multiple times.

Although the Defendant complains that he did not receive the benefit of concurrent sentencing like his codefendant, we note that the codefendant's concurrent sentencing was a term of the negotiated plea agreement. The Defendant's plea agreement contained no such

provision and left the matter to the trial court's determination. The Defendant was not required to accept the State's plea offer and could have proceeded to a trial. Regardless of his reasoning for accepting the plea agreement, the record reflects the Defendant voluntarily and knowingly pleaded guilty and understood that the trial court would determine the length and the manner of service of the sentences. The Defendant's dissatisfaction that his codefendant received concurrent sentencing does not translate to a conclusion that the trial court abused its discretion by imposing partial consecutive service in the Defendant's case. We note that the codefendant is required to serve 100% of his twenty-year sentence but that the Defendant is release eligible after serving 85% of sixteen years. The Defendant received a shorter sentence than his codefendant. In any event, the circumstances of the offenses, the Defendant's background, and the Defendant's serving a sentence on probation at the time of the present offenses are the relevant factors in determining the Defendant's sentence. A trial court's sentencing determinations are fashioned to the individual offender. The Defendant's effective sixteen-year sentence is supported by the record, and *Biggs* affords him no relief. The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE

-10-